# FORBES LITHOGRAPH MANUFACTURING COMPANY *v.* WORTHINGTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 163. Submitted December 13, 1889. — Decided December 23, 1889.

Plaintiff imported into the United States a quantity of iron advertising or show cards of various sizes. They were sold here for advertising pur-

poses, to hang on walls, or in windows, in public places, and contained generally the name of the person or of the article advertised and some picture or ornament, which were printed from lithographic stones upon the plates of sheet iron in the same way that lithographing is done upon paper or cardboard. The principal part of the value of the completed card was in the printing done upon the material, and not in the material itself; *Held*, that they were subject to a duty of 45 per cent *ad valorem* as manufactures, etc., not specially enumerated or. provided for, composed wholly or in part of iron, under the last paragraph of Schedule C, Rev. Stat. § 2502, as enacted March. 3, 1883, 22 Stat. 501, c. 121; and not as printed matter not specially enumerated or provided for, under the first paragraph of Schedule M in the same amending act.

THIS cause was heard by the district judge for the District of New Hampshire, holding the Circuit Court, upon the following agreed statement of facts:

" This was an action in which the writ was dated April 18, 1884, brought by the Forbes Lithograph Manufacturing Company, a corporation located at Boston, in said district, to recover back $1081.42, the amount of duties alleged by them to have been illegally exacted by the defendant Worthington, as collector of the port of Boston, on certain merchandise described in the invoice and entries as 'iron show-cards' imported by them. The pleadings may be referred to. The plaintiffs imported these cards into the port of Boston from Paris, in France, by different steamers from Liverpool, the importations being made in ten separate lots, and extending from December 19, 1883, to April 2, 1884.

" On each importation as received the plaintiffs paid the assessed duties under protest, and duly filed such protest with the collector and their appeal with the Secretary of the Treasury. A copy of one of the protests, which may stand for all, is hereto annexed and marked ' A,' and this action was seasonably brought.

" The collector exacted a duty of forty-five per centum ad valorem (amounting in the aggregate to $2432.62), under the clause in Schedule C (last section) of the tariff law of March 3, 1883, which is as follows: ' Manufactures, articles, or wares, not specially enumerated or provided for in this act, composed wholly or in part of iron  .  .  .  or any other metal, and

whether partly or wholly manufactured, forty-five per centum ad valorem,' while the said importers claimed that the goods were dutiable at twenty-five per centum ad valorem only, (the aggregate amounting to $1351.20,) under the clause in Schedule M, (first section,) which is as follows : ' Books, pamphlets, bound or unbound, and all printed matter, not specially enumerated or provided for in this act, engravings, bound or unbound, etchings, illustrated. books, maps and charts, twenty-five per centum ad valorem.'

" The difference between the amount of said duties, at forty-five per cent and at twenty-five per cent, is $1081.42, which is the amount that the plaintiffs claim in this case.

" All the goods charged with the duties were iron show-cards or advertising cards or signs.

" They were manufactured in Paris on orders given by the said importers to fill orders from parties here, who used them for advertising purposes (to hang on the walls or in windows or in public places, to give to customers, etc.). The importers imported and sold them to the consumers here for such advertising purposes only. The cards were of different sizes, being on the average about a foot long by six inches wide, and contained generally the name of the person and of the article advertised, with some picture or ornament thereon — for example, as follows :

| BREWERY ESTABLISHED | ROBERT SMITH'S | A. D. 1875. |
|---|---|---|

INDIA PALE ALE & BROWN STOUT,

| IN BOTTLE. | PHILADELPHIA. U. S. A. | ON DRAUGHT. |
|---|---|---|

| LITH. MAX CREMITZ, PARIS. | FORBES CO., BOSTON, SOLE AGENTS. |
|---|---|

" These cards were prepared in different colors on plates of sheet iron. It is agreed, if relevant to the issue, that the value

of the iron plates before the printing was put upon them was about two or three cents each, and that the other material of the card as material was of like trifling value, while that of the completed card or sign was about twenty to twenty-five cents.

"These cards or signs were lithographed (that is to say, printed) from lithographic stones on hand presses in the same way that lithographing is done on paper or on card-board. Samples of said cards are filed herewith, marked 'Exhibit B,' and may be referred to at the hearing.

"The case is submitted by the parties on the above as an agreed statement of facts.

"If upon the foregoing facts the merchandise should have been assessed at 25 per cent, judgment is to be rendered for the plaintiffs for $1081.42 and costs; otherwise for defendant for costs."

Copy of the protest was attached to the statement, and samples of the cards accompanied it as exhibits.

The court found for the defendant and entered judgment accordingly, and a writ of error was sued out from this court upon exceptions to the findings and rulings. The opinion is reported in 25 Fed. Rep. 899.

*Mr. Selwyn Z. Bowman* for plaintiff in error.

*Mr. Assistant Attorney General Maury* for defendant in error.

Mr. Chief Justice Fuller delivered the opinion of the court.

We concur with the district judge in his conclusion that these iron show-cards were properly assessed as manufactures of iron not specially enumerated or provided for in the act of March 3, 1883, and as such liable to duty under the last paragraph of Schedule C of section 2502 of the Revised Statutes, as enacted by that act, which reads:

"Manufactures, articles or wares, not specially enumerated

or provided for in this act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem." 22 Stat. 501, c. 121.

This is conceded by plaintiff in error unless the articles were dutiable as "printed matter" under the first paragraph of Schedule M of that section, 22 Stat. 510, c. 121, which is quoted in the statement of facts, and given hereafter.

The diligence of counsel has furnished us with definitions, from many dictionaries and encyclopædias, of the words "print," "printing" and "printed matter," from which it is argued that the essential feature of printing is not the substance on which the printing is done, but the mode of making the impression. But the question here is not whether these iron show-cards, being lithographed or printed, could be styled "printed matter" within the meaning of these words as given by lexicographers, but whether they were "printed matter" as those words are used in Schedule M of the act of March 3, 1883.

There was no evidence that signs of this kind were known commercially, or by printers, bookbinders, dealers in books, pamphlets or periodicals, or others, as "printed matter."

In *Arthur* v. *Moller*, 97 U. S. 365, certain chromo-lithographs printed from oil stones upon paper were held subject to the duty levied upon printed paper; and Mr. Justice Hunt, in delivering the opinion of the court, says that "the term 'print' or 'printing' includes the most of the forms of figures or characters or representations, colored or uncolored, that may be impressed on a yielding surface;" and that "the pictures in question were printed from lithographic stones, by successive impressions, each impression giving a different portion of the view and of a different color. Like other pictures, they are made and used for the purpose of ornament. Equally with engravings, copper plates and lithographs, they are printed, and properly fall within the statutory designation of printed matter. If further argument were needed it would be found in the principle *noscitur a sociis*. 'Printed matter' is

named in the list with engravings, maps, charts, illustrated papers. With these printed pictures are naturally associated."

Undoubtedly the words "printed matter" are popularly considered as applying to paper or some similar substance commonly used to receive the impression of letters, characters or figures by type and ink, and reference to the legislation of Congress demonstrates that the phrase was used in the schedule in question in this sense.

By section 18 of the act of March 2, 1861, fixing duties on imports, etc., a duty of fifteen per centum ad valorem was· levied " on all books, periodicals and pamphlets, and all printed matter and illustrated books and papers." 12 Stat. 187.

In section 94 of the act of June 30, 1864, appears this paragraph:

" On all printed books, magazines, pamphlets, reviews and all other similar printed publications, except newspapers, a duty of five per centum ad valorem." 13 Stat. 267.

By " Schedule M, Sundries," of section 2504 of the Revised Statutes, it is provided:

" Books, periodicals, pamphlets, blank books, bound or unbound, and all printed matter, engravings, bound or unbound, illustrated books and papers, and maps and charts, twenty-five per centum ad valorem." Rev. Stat. 2d ed. 474.

In section 2502, of Title 33, of the Revised Statutes as enacted by the act of March 3, 1883, the first paragraph of the schedule headed " Schedule M, Books, Papers, etc.," reads:

" Books, pamphlets, bound or unbound, and ·all printed matter, not specially enumerated or provided for in this act, engravings bound or unbound, etchings, illustrated books, maps and charts, twenty-five per centum ad valorem." 22 Stat. 510.

And then follow nine paragraphs, making ten in all in this schedule, relating to blank books, bound or unbound, and blank books for press copying; paper, sized or glued, suitable only for printing paper; printing paper, unsized, used for books and newspapers exclusively; manufactures of paper not specially enumerated; sheathing paper; paper boxes, and

all other fancy boxes; paper envelopes; paper hangings and paper for screens or fire-boards, paper antiquarian; demy, drawing, elephant, foolscap, imperial, letter, note, and all other paper not specially enumerated or provided for in the act; pulp, dried, for paper-makers' use.

It is very clear that these iron signs were not dutiable under a schedule headed "books, papers, etc.," and confined throughout to the subject matter thus indicated.

If a duty had been imposed on iron show-cards *eo nomine*, the latter would not have been dutiable as "manufactures of iron," any more than "braces and suspenders," though made of rubber, were dutiable as "manufactures of rubber," *Arthur v. Davies*, 96 U. S. 135, or "artificial flowers," though made of cotton, were dutiable as "manufactures of cotton." *Arthur v. Rheims*, 96 U. S. 143. The specific designation would prevail over the general words which otherwise embraced the article. In *Arthur v. Jacoby*, 103 U. S. 677, decorated porcelain ware being subject to one rate of duty and pictures to another, it was held that where it appeared that certain pictures had been painted by hand on porcelain, which, it was proved, "did not in itself constitute an article of chinaware, being manufactured simply as a ground for the painting, and not for any use independent of the paintings," they were taxable as pictures and not as decorated porcelain ware. The question decided, as stated by Mr. Chief Justice Waite at the close of the opinion, was that "the goods were not chinaware, but paintings."

But here the articles were clearly manufactures of iron, and were not "printed matter," within the meaning of the clause relied on by the plaintiff, because those words, as there used, applied only to articles *ejusdem generis* with books and pamphlets, which iron show-cards were not.

We find no difficulty in concluding that the case was properly decided, and the judgment is

*Affirmed.*